189 Cal.App.4th 374 (2010)
116 Cal. Rptr. 3d 871
THE PEOPLE, Plaintiff and Respondent,
v.
LUIS OSCAR SANCHEZ, Defendant and Appellant.
No. F057147.
Court of Appeals of California, Fifth District.
October 19, 2010.
*377 Eleanor M. Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, David Andrew Eldridge and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
DAWSON, Acting P. J.
Appellant, Luis Oscar Sanchez, pled no contest to cultivation of marijuana (Health & Saf. Code, § 11358) and admitted allegations that he had a prior conviction within the meaning of the three strikes law (Pen. Code, § 667, subds. (b)-(i)). He also admitted that he violated probation in two other cases. Sanchez was promised a stipulated term of 32 months in exchange for his pleas and admissions. On January 2, 2009, the court sentenced Sanchez to the agreed-upon terma total of 32 months for all three cases.
On appeal, Sanchez contends the court erred in its failure to conduct a Marsden[1] hearing when he indicated his desire to withdraw his pleas and admissions based on incompetence of defense counsel. We will find merit to this contention and remand the matter for further proceedings.

FACTS

Introduction
On May 10, 2008, Lindsay police officers responded to a house to investigate a 911 hang-up call and were told by Sanchez that he dialed 911 accidentally. The officers searched the house to make sure no one there needed assistance. Detecting a strong odor of marijuana in one room, the officers looked in the room's closet and discovered four marijuana plants growing inside.

The Motion to Withdraw Plea
Sanchez entered his plea in this matter on October 28, 2008. On December 2, 2008, the date set for sentencing, Deputy Public Defender Tony Dell'Anno *378 told the court that Sanchez wanted to withdraw his plea. The court then asked whether it needed to appoint conflict counsel. Dell'Anno replied with his understanding that, before conflict counsel was appointed, the court had to find that the public defender's office had not provided Sanchez competent representation. Dell'Anno further stated that, at that point, his office needed to "check out any issues for possible withdraw[a]l ourselves." The court agreed to give Dell'Anno time, stating: "... I am going to give you till the 9th to let me know whether or not conflict counsel needs to be appointed and at that time you can give me an update as to whether counsel needs to be appointed or that you need to file a motion on his behalf as his representative."
At a hearing on December 9, 2008, a different public defender appeared and the following colloquy occurred:
"[DEFENSE COUNSEL]: Luis Sanchez. He is appearing in court and conflict counsel needs to be [ap]pointed.
"THE COURT: We had discussed you were looking into conflict [counsel] needing to be appointed if you wanted to do a motion to withdraw his plea. [¶] Your assessment is that it's necessary, so what I am going to do is ... appoint conflict counsel for the sole purpose of looking into the motion to withdraw his plea."
On December 30, 2008, Sanchez appeared in court with Wes Hamilton, counsel appointed for that special purpose. Hamilton told the court that Sanchez was adamant about withdrawing his plea but Hamilton did not see a legal basis for doing so. The court then relieved Hamilton, reappointed the public defender's office to represent Sanchez, and continued the matter for sentencing.
At the sentencing hearing, on January 2, 2009, defense counsel announced that Sanchez still wanted to withdraw his plea. The court noted that special counsel had done "an evaluation on his case" and had found no basis for plea withdrawal. The court then sentenced Sanchez to a 32-month term in all three cases as provided in the plea agreement.
On February 26, 2009, Sanchez filed a timely appeal in all three cases.

DISCUSSION
Sanchez contends the public defender's statements to the trial court clearly indicated that the basis for Sanchez's motion to withdraw plea was defense *379 counsel's alleged ineffectiveness. This, according to Sanchez, was sufficient to require the court to conduct a Marsden hearing and it erred by its failure to do so.
(1) We will conclude that the trial court's duty to conduct a Marsden hearing was triggered by defense counsel's request for appointment of substitute counsel to investigate the filing of a motion to withdraw plea on Sanchez's behalf. We also will conclude that the court erred by appointing substitute counsel without a proper showing and by reappointing the public defender's office to represent Sanchez after substitute counsel announced his conclusion that there was no basis for filing a motion to withdraw plea on Sanchez's behalf. In drawing these conclusions, we will rely on this court's opinions in People v. Eastman (2007) 146 Cal.App.4th 688 [52 Cal.Rptr.3d 922] (Eastman), People v. Mejia (2008) 159 Cal.App.4th 1081 [72 Cal.Rptr.3d 76] (Mejia), and People v. Mendez (2008) 161 Cal.App.4th 1362 [75 Cal.Rptr.3d 162] (Mendez).
(2) We publish this opinion for the purpose of clarifying the proper procedure for trial courts to follow in the circumstances presented.[2] That procedure includes (1) making an adequate inquiry of the defendant and his or her defense counsel, to learn the general basis for the defendant's motion; (2) conducting a Marsden hearing, if the general basis for the motion is the alleged incompetence of defense counsel; (3) relieving defense counsel and appointing a new attorney for the defendant if, and only if, "a failure to replace the appointed attorney would substantially impair the [defendant's] right to assistance of counsel. . . ." (People v. Smith (1993) 6 Cal.4th 684, 696 [25 Cal.Rptr.2d 122, 863 P.2d 192] (Smith).) The proper procedure does not include the appointment of "conflict" or "substitute" counsel to investigate or evaluate the defendant's new trial or plea withdrawal motion.
As we noted in Eastman:
"Marsden and its progeny require that when a defendant complains about the adequacy of appointed counsel, the trial court permit the defendant to articulate his causes of dissatisfaction and, if any of them suggest ineffective assistance, to conduct an inquiry sufficient to ascertain whether counsel is in fact rendering effective assistance. [Citations.] If the defendant states facts sufficient to raise a question about counsel's effectiveness, the court must question counsel as necessary to ascertain their veracity. [Citations.]" (Eastman, supra, 146 Cal.App.4th at p. 695.)
*380 (3) "Marsden imposes four requirements that the trial court here ignored. First, if `defendant complains about the adequacy of appointed counsel,' the trial court has the duty to `permit [him or her] to articulate his [or her] causes of dissatisfaction and, if any of them suggest ineffective assistance, to conduct an inquiry sufficient to ascertain whether counsel is in fact rendering effective assistance.' [Citations.] ... [¶] ... [¶] Second, if a `defendant states facts sufficient to raise a question about counsel's effectiveness . . .,' the trial court has a duty to `question counsel as necessary to ascertain their veracity.' [Citation.] ... [¶] Third, the trial court has the duty to `make a record sufficient to show the nature of [a defendant]'s grievances and the court's response to them.' [Citation.] ... [¶] Fourth, the trial court must `"allow the defendant to express any specific complaints about the attorney and the attorney to respond accordingly."' [Citation.]" (Mendez, supra, 161 Cal.App.4th at pp. 1367-1368.)
In Eastman, the defendant entered into a plea agreement in which he pled no contest to two counts of lewd and lascivious conduct with a child under the age of 14 (Pen. Code, § 288, subd. (a)). At the time for sentencing, his defense attorney (1) informed the court that the defendant wanted to withdraw his plea, and (2) asked the court to appoint substitute counsel. Also, the defendant submitted to the court a letter (written by his mother) requesting that he receive an "`adequate defense'" and accusing his attorney of misconduct. (Eastman, supra, 146 Cal.App.4th at pp. 695-696.) The court appointed counsel "`for the specific grounds of determining [the] motion to withdraw.'" (Id. at p. 690.) Subsequently, that attorney announced he would not be filing a motion to withdraw plea because his investigation did not disclose any grounds for such a motion. Original defense counsel then resumed his representation of the defendant during the sentencing hearing. (Id. at p. 693.)
In finding that the defendant's letter was sufficient to trigger the trial court's duty to conduct a Marsden hearing, this court stated, "Although Eastman did not expressly ask to have his attorney replaced, the letter did request that Eastman receive an `adequate defense' and his complaints set forth an arguable case that a fundamental breakdown had occurred in the attorney-client relationship that required replacement of counsel. The court was obliged to make a record that this complaint had been adequately aired and considered. [Citation.]" (Eastman, supra, 146 Cal.App.4th at pp. 695-696.)
We also noted in Eastman that the practice of appointing a second attorney to represent a defendant for the purpose of exploring the defendant's motion to withdraw has been soundly criticized by the Supreme Court in People v. Smith, supra, 6 Cal.4th 684. (Eastman, supra, 146 Cal.App.4th at p. 698.)
*381 (4) In Smith, the Supreme Court explained the pitfalls of appointing counsel to investigate the defendant's complaints as happened here: "In People v. Makabali (1993) 14 Cal.App.4th 847 [18 Cal.Rptr.2d 72] the trial court appointed second counsel to investigate a possible motion to withdraw a guilty plea on the basis of ineffective assistance of counsel. New counsel did not make the motion. On appeal, appointed appellate counsel, i.e., the third attorney, claimed (unsuccessfully) that the second was incompetent for not claiming the first was incompetent. The spectacle of a series of attorneys appointed at public expense whose sole job, or at least a major portion of whose job, is to claim the previous attorney was, or previous attorneys were, incompetent discredits the legal profession and judicial system, often with little benefit in protecting a defendant's legitimate interests. [¶] We note also that in People v. Makabali ... the original attorney was apparently not relieved of further representation of the defendant. He represented the defendant at sentencing, after the second attorney did not move to withdraw the plea. [Citation.] We are unaware of any authority supporting the appointment of simultaneous and independent, but potentially rival, attorneys to represent defendant. When a Marsden motion is granted, new counsel is substituted for all purposes in place of the original attorney, who is then relieved of further representation. If the Marsden motion is denied, at whatever stage of the proceeding, the defendant is not entitled to another attorney who would act in effect as a watchdog over the first. [¶] We stress, therefore, that the trial court should appoint substitute counsel when a proper showing has been made at any stage. A defendant is entitled to competent representation at all times, including presentation of a new trial motion or motion to withdraw a plea.... [W]hen a defendant satisfies the trial court that adequate grounds exist, substitute counsel should be appointed. Substitute counsel could then investigate a possible motion to withdraw the plea or a motion for new trial based upon alleged ineffective assistance of counsel. Whether, after such appointment, any particular motion should actually be made will, of course, be determined by the new attorney." (Smith, supra, 6 Cal.4th at pp. 695-696, italics added.)
In Mejia, a jury convicted the defendant of first degree murder and other offenses. At the sentencing hearing, defense counsel informed the court that the defendant wanted to move for a new trial "`based in large part'" on defense counsel's conduct and that he could not make the motion for the defendant. After the court stated that it needed some information before it conducted an in camera hearing, defense counsel replied that the defendant was unhappy with defense counsel's approach to his defense, his failure to make a motion to dismiss several counts, and his failure to present a defense of self-defense. After hearing from the prosecutor, the court denied the "`motion for ... appointment of conflict attorney.'" (Mejia, supra, 159 Cal.App.4th at pp. 1084-1085.)
*382 (5) On appeal, this court held that, when defense counsel conveyed to the trial court the information that the defendant wanted to file a motion for new trial on the basis of incompetence of counsel, it triggered the trial court's duty to conduct a Marsden hearinga duty that the court did not discharge by making inquiries only of defense counsel. We rejected the respondent's contention that the trial court had no duty to conduct a Marsden hearing because the defendant did not make such a request. In so doing, we stated, "[Defendant's] counsel's representation to the trial court about Ismael's request `to make a motion for a new trial based in large part on [his counsel's] conduct at the trial' was adequate to put the trial court here on notice of Ismael's request for a Marsden hearing. Our Supreme Court emphasizes: `The semantics employed by a lay person in asserting a constitutional right should not be given undue weight in determining the protection to be accorded that right.' [Citation.]" (Mejia, supra, 159 Cal.App.4th at p. 1086.)
In Mendez, a jury found the defendant guilty of battery with infliction of serious bodily injury on a fellow inmate (Pen. Code, § 243, subd. (d)), and the trial court found true five prior strike convictions (Pen. Code, § 667, subds. (b)-(i)). (Mendez, supra, 161 Cal.App.4th at p. 1364.) At the defendant's sentencing hearing, defense counsel informed the trial court that the defendant was making a new trial motion "`based on incompetency of counsel.'" After allowing the defendant an opportunity to express some complaints about his representation, the court appointed substitute counsel stating, "`All right. I'll appoint [new counsel] to represent Mr. Mendez for the sole purpose of investigating as to whether or not there appears to be a basis for a motion for new trial based on incompetency of counsel....'" Substitute counsel, however, did not file a motion for new trial because, after reviewing the file, he concluded there was no basis for such a motion. The trial court then reassigned the case to the defendant's original counsel. (Id. at p. 1366.)
On appeal, we found that the court erred in its failure to hold a Marsden hearing. (Mendez, supra, 161 Cal.App.4th at pp. 1367-1368.) In so finding, we rejected the respondent's claim that the trial court did not have a duty to conduct a Marsden hearing because the defendant never indicated he wanted another attorney: "In People v. Stewart (1985) 171 Cal.App.3d 388 [217 Cal.Rptr. 306] (Stewart), ... defendant `personally instructed his appointed trial counsel to file a motion for new trial on the basis of incompetence of counsel.' [Citation.] That was adequate to put the trial court on notice of defendant's request for a Marsden hearing. [Citation.] Here, Mendez informed his trial attorney that he was making a new trial motion `based on competency of counsel.' That, too, was adequate to put the trial court on notice of his request for a Marsden hearing." (Mendez, supra, 161 Cal.App.4th at p. 1367, citations omitted; cf. People v. Reed (2010) 183 Cal.App.4th 1137, *383 1145-1146 [107 Cal.Rptr.3d 710]; contra People v. Richardson (2009) 171 Cal.App.4th 479, 484-485 [90 Cal.Rptr.3d 92].)
Here, the trial court appointed "conflict" counsel "for the sole purpose of looking into the motion to withdraw his plea." At the previous hearing, by telling the court that substitute counsel could be appointed only if the court found that the public defender had not provided competent representation, Sanchez's first public defender in effect told the court that the basis for the motion to withdraw plea would be ineffective assistance of counsel.[3] In accord with the cases cited above, we conclude that the court erred by not conducting a Marsden hearing.
Respondent does not discuss whether the trial court here had a duty to conduct a Marsden hearing. Instead, respondent cites statutory law and People v. Dickey (2005) 35 Cal.4th 884 [28 Cal.Rptr.3d 647, 111 P.3d 921] (Dickey), to contend that Sanchez is precluded from complaining on appeal that the court gave him exactly what he asked for, the appointment of counsel to investigate whether to file a motion to withdraw plea. In a real sense, however, Sanchez did not get what he wanted. In Dickey, separate counsel actually filed a motion on behalf of the defendant. That did not happen here.
Moreover, respondent's analysis is superficial and misses the point. For example, respondent uses several pages of its opening brief to conclude that the "issue presented in [People v.] Smith[, supra, 6 Cal.4th 684] was whether a criminal defendant could complain about [the] denial of his own request for additional counsel." From this premise, respondent further concludes that Smith cannot be cited as support for the proposition that a defendant can "complain about the grant of his own request for additional counsel." Sanchez, however, did not cite to Smith in support of his appellate contentions. Further, the Supreme Court framed the main issue in Smith as follows: "Under what circumstances must the trial court substitute new counsel in place of the first attorney for future representation, including investigating and, if appropriate, presenting a claim that the first attorney was ineffective?" (Smith, supra, 6 Cal.4th at p. 687.) It did not, as respondent suggests, purport to address whether the defendant could complain that his request for substitute counsel was granted.
Respondent also mischaracterizes the holding of Dickey, supra, 35 Cal.4th 884. That was a death penalty case where, following the guilt phase of the trial, defense counsel requested the appointment of separate counsel to assist the defendant in making a motion for a new trial based on several grounds *384 including counsel's ineffectiveness during the guilt phase. In making the request, defense counsel clearly framed the matter as a request for separate counsel, not substitute counsel. He also made it clear that the idea for the request came from him, not the defendant, and that the genesis for the request was a disagreement over "`trial tactic decisions that were made on witnesses who were called and not called and the way some things were presented.'" (Id. at p. 918.) Defense counsel further told the court that what he sought was "`not really a pure Marsden hearing.'" (Id. at p. 918, fn. 12.) After some discussion, the defendant acquiesced in the court's decision to appoint separate counsel after the penalty phase to review the case and determine whether there were any grounds for a motion for new trial. (Id. at pp. 919-920.) After the penalty phase, the trial court did appoint separate counsel, who did file a motion for a new trial alleging that defense counsel was ineffective during the guilt phase and that the court erred in not conducting a Marsden hearing following the guilt phase. (Dickey, at p. 920.) The trial court denied the motion finding, as to the defendant's Marsden claim, that the defendant had not asked for a Marsden hearing. (Dickey, at p. 920.)
On appeal, the defendant claimed that he had sought to make a Marsden motion for the appointment of different counsel to represent him in the penalty phase and that the trial court erred by its failure to hold a Marsden hearing and by declining to rule on his motion until the penalty phase was concluded. In rejecting these contentions, the Supreme Court stated, "We conclude the court did not commit Marsden error. `"Although no formal motion is necessary, there must be `at least some clear indication by defendant that he wants a substitute attorney.'" [Citation.]' [Citation.] Defendant did not clearly indicate he wanted substitute counsel appointed for the penalty phase. To the extent he made his wishes known, he wanted to use counsel's assertedly incompetent performance in the guilt phase as one of the bases of a motion for new trial, and he wanted to have separate counsel appointed to represent him in the preparation of such a motion. As his expressed wishes were honored, he has no grounds for complaint now." (Dickey, supra, 35 Cal.4th at pp. 920-921, some italics added.)
The issue in Dickey was not, as respondent contends, simply whether the defendant could complain about receiving the separate counsel he requested to assist him in presenting a motion for new trial. Instead, the issue was whether the defendant's communications and those of his defense counsel triggered the trial court's duty to conduct a Marsden hearing at the end of the guilt phase of the trial and, if appropriate, to appoint substitute counsel to *385 represent the defendant for the remainder of the trial. As noted above, the Supreme Court concluded that the statements of defense counsel and the defendant did not trigger the trial court's duty to conduct a Marsden hearing because the defendant did not clearly indicate he wanted substitute counsel appointed for the penalty phase.
Dickey is distinguishable from the instant case because here defense counsel on behalf of Sanchez made an unambiguous request for the appointment of "conflict" counsel. Moreover, in Dickey, defense counsel told the trial court that the request for separate counsel originated with him and that he was not seeking a "pure" Marsden hearing. Further, the defendant's conduct in Dickey was inconsistent with a desire to discharge his original counsel because he did not ask for new counsel to represent him in the penalty phase of the trial and he acquiesced to the continued representation by his original counsel during this phase. For all these reasons, we reject respondent's contention that the court did not commit Marsden error because Sanchez received exactly what he asked for.
(6) Thus, we conclude that, when a defendant announces his or her desire to make a motion for new trial or a motion to withdraw plea on the ground of ineffective assistance of counsel, the court should conduct a Marsden hearing to explore the reasons underlying the request. This is true even where the defendant or defense counsel requests the appointment of another attorney to explore the viability of the motion.[4] If the court is not sure whether the basis of the defendant's motion is alleged attorney incompetence, the court should inquire of counsel or the defendant, just as it would in any circumstance in which it appears a Marsden hearing might be required. Substitute counsel should be appointed only if the defendant makes a showing that his right to counsel has been substantially impaired. Once appointed, substitute counsel remains the attorney of record for all purposes.

DISPOSITION
The judgment is reversed and the matter is remanded with the following directions: (1) the court shall hold a hearing on Sanchez's Marsden motion concerning his representation by the public defender's office; (2) if Sanchez makes a prima facie showing of ineffective assistance of counsel, the court *386 shall appoint new counsel to represent him and shall entertain such applications as newly appointed counsel may make; and (3) if newly appointed counsel does not make any motions, any motions made are denied, or Sanchez's Marsden motion is denied, the court shall reinstate the judgment.
Hill, J., and Kane, J., concurred.
NOTES
[1] People v. Marsden (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].
[2] Here, as in Eastman, the defendant made a motion to withdraw plea. (Eastman, supra, 146 Cal.App.4th at p. 691.) In Mendez and Mejia, the defendants made new trial motions. (Mendez, supra, 161 Cal.App.4th at p. 1365; Mejia, supra, 159 Cal.App.4th at p. 1084.)
[3] We presume that the trial court understood the motion to withdraw plea would be based on alleged incompetence of counsel. Otherwise, why would the court have appointed "conflict" counsel?
[4] Defense counsel, like the trial courts, should abandon their reliance on counsel specially appointed to do the trial court's job of evaluating the defendant's assertions of incompetence of counsel and deciding the defendant's new trial or plea withdrawal motion. (See Eastman, supra, 146 Cal.App.4th at p. 697 ["the court cannot abandon its own constitutional and statutory obligations to make the ultimate determination itself based upon the relevant facts and law of which the court is made aware by some legally sanctioned procedure"].)